IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID M.,**[1] | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 24-4273** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| *Defendant.* | : | |

<u>**MEMORANDUM OPINION**</u>

**HON. JOSÉ RAÚL ARTEAGA**                              December 30, 2025
**United States Magistrate Judge**[2]

    The Commissioner of Social Security, through an Administrative Law Judge

("ALJ"), determined that Plaintiff David M. was not disabled and denied his claims for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-

433, and for Supplemental Security Income under the Act's Title XVI, 42 U.S.C. §§ 1381-

1383. (Tr. 29, 65-66.) David M. seeks reversal or remand pursuant to 42 U.S.C. § 405(g),

arguing that substantial evidence does not support the ALJ's decision because she failed

to properly evaluate the objective medical evidence, his subjective complaints, and the

---

[1] The Court refers to David M. solely by his first name and initials in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Dec. 23, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4.)

medical opinion from Ziba Monfared, M.D. (ECF 9 at ECF p. 6-13.) He also claims that the ALJ improperly found that he could perform jobs existing in significant numbers in the national economy. (*Id.* at ECF p. 11-12.) In response, the Commissioner argues that the ALJ appropriately evaluated the overall record, discredited David M.'s subjective complaints, and found that David M. was not disabled. (ECF 12 at 4-14.)

After a careful review of the entire record, David M.'s request for reversal or remand is **DENIED** and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

David M. applied for Disability Insurance Benefits and Supplemental Security Income on April 22, 2022, claiming disability beginning on November 21, 2020. (Tr. 65-66.) The state agency denied his applications initially and on reconsideration. (Tr. 65-66, 81-82.) He requested a hearing and consented to a telephonic proceeding.  (Tr. 132-34.) On August 1, 2023, an ALJ heard testimony from a vocational expert ("VE") and David M., who was represented by counsel. (Tr. 41-64.) The ALJ denied David M.'s application on October 10, 2023. (Tr. 12-34.)

The ALJ first determined that David M. met the Social Security Act's insured status requirements through September 30, 2025, and had not engaged in substantial gainful activity[3] since his alleged disability onset date. (Tr. 18.) He had at least a high school

---

[3] The regulations define "substantial gainful activity" as work activity that is both substantial and gainful. *See* 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). The Commissioner generally presumes individuals have demonstrated the ability to engage in substantial gainful activity if they have earnings above a level set out in the regulations.  *See* 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975.

education and was thirty years old on that date, or a "younger person" in Social Security terms. (Tr. 27.) *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

According to the ALJ, David M. had multiple severe impairments: degenerative disc disease of the lumbar spine, obesity, peripheral neuropathy, trochanteric bursitis, iliotibial ("IT") band syndrome, and myofascial pain syndrome. (Tr. 18.) However, she concluded that these impairments did not meet or medically equal the severity of impairments listed in the regulations when considered alone or in tandem.[4] (Tr. 18-20.) Though David M. testified to a history of depression, the ALJ found insufficient support in the record to establish his depression as a medically determinable impairment. (Tr. 18.)

To calculate David M.'s residual functional capacity ("RFC"),[5] the ALJ analyzed the voluminous record. (Tr. 22-26.) She considered the following treatment records: (1) a December 7, 2020 progress note from Brynn Becker, PA-C (Tr. 679-82 (Ex. 10F at 152-55)); (2) four progress notes from December 14, 2020, to February 8, 2021, from orthopedist William McCafferty III, D.O. (Tr. 657-63, 665-68 674-79 (Ex. 10F at 130-36, 138-41, 147-52)); (3) a March 1, 2021 progress note from orthopedist Gbolabo Sokunbi, M.D. (Tr. 655-57 (Ex. 10F at 128-30)); (4) March 16, 2021 and October 28, 2021 progress notes from pain and

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] Residual functional capacity is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

spine specialist Scott Loev, D.O. (Tr. 631-32, 652-55 (Ex. 10F at 104-05, 125-28)); (5) a July

26, 2021 progress note from orthopedic surgeon Andrew Konopitski, M.D. (Tr. 643-45

(Ex. 10F at 116-18)); (6) an August 19, 2021 progress note from Amanda Semonche, D.O.

(Tr. 290-94 (Ex. 1F at 4-8)); (7) an October 29, 2021 note from Manette Roos, R.N. (Tr. 632

(Ex. 10F at 105)); (8) three treatment records spanning December 7, 2021, to April 12, 2022

from pain and spine specialist Daryl Gordon, C.R.N.P. (Tr. 448-51, 465-68, 624-27 (Ex. 7F

at 43-46, 60-63; Ex. 10F at 97-100)); (9) a March 14, 2022 progress note from physical

therapist Paul Furst, P.T. (Tr. 460-64 (Ex. 7F at 55-59)); (10) three treatment records from

July 21 to October 18, 2022 from neurosurgical associate Daniel O'Rourke, M.D. (Tr. 366-

75, 393-401 (Ex. 5F at 3-12; Ex. 6F at 18-26)); (11) August 23 and 24, 2022 notes from

Amberlynn Schwartz, R.N. (Tr. 427-28, 570 (Ex. 7F at 22-23; Ex. 10F at 43)); (12) an October

25, 2022 progress note from physical therapist Kahli Castagnera, P.T. (Tr. 413-17 (Ex. 7F

at 8-12)); and (13) a March 27, 2023 progress note from spine and pain nurse practitioner

Nicole Marie Markovcy, C.R.N.P. (Tr. 533-37 (Ex. 10F at 6-10).) The ALJ considered

evidence of David M.'s treatment, including that he received numerous epidural/pain

management injections with temporary to no relief (Tr. 369, 695, 719-20 (Ex. 5F at 6; Ex.

10F at 168, 192-93)) and Targeted Restoration Protocol injections with a "fair response."

(Tr. 462 (Ex. 7F at 57).) The ALJ also factored that David M. underwent a METRx left L5-

S1 microdiscectomy and foraminotomy on August 22, 2022 (Tr. 425-26 (Ex. 7F at 20-21))

and a nerve ablation with a "good response" for eight to ten months. (Tr. 462 (Ex. 7F at

57).) The ALJ evaluated imaging of David M.'s lumbar spine, including a February 17,

2022 x-ray (Tr. 487-88) and February 4, 2021, April 2022,[6] and January 11, 2023 MRIs. (Tr. 355-56, 484-87, 698-700 (Ex. 3F at 28; Ex. 7F at 79-82; Ex. 10F at 171-73).) Further, she considered Dr. Monfared's medical opinion (Tr. 511-25 (Ex. 9F at 3-17)) and prior administrative medical findings by Drs. Manganiello (Tr. 67-80 (Ex. 3A at 1-7; Ex. 4A at 1-7)) and Hutz. (Tr. 83-98 (Ex. 7A at 1-8; Ex. 8A at 1-8).)

In addition to David M.'s complaints documented in the medical evidence, the ALJ considered his testimony (Tr. 41-56); May 4, 2022 disability report (Tr. 215-21 (Ex. 3E at 1-7)); July 18, 2022 function report (Tr. 222-29 (Ex. 4E at 1-8)); November 9, 2022 disability report (Tr. 242-48 (Ex. 6E at 1-7)); and April 7, 2023 disability report. (Tr. 255-61 (Ex. 9E at 1-7); *see* Tr. 21-26.)

The ALJ determined from the whole record that David M. had the RFC to perform light work[7] subject to limitations. (Tr. 20-21.) She found that he could frequently reach in all directions, handle, finger, feel, or push and pull with his upper extremities bilaterally. (Tr. 20.) He could occasionally perform foot control operations bilaterally, climb ramps or stairs, stoop, or kneel and crawl. (*Id.*) He could never crouch or climb ladders, ropes, or scaffolds, and needed "to avoid concentrated exposure to[] extreme cold, wetness, vibrations, driving vehicles, unprotected heights, and moving machinery." (Tr. 20-21.) The ALJ also concluded that David M. needed to be able to alternate positions

---

[6] The record provides at least three different dates for this MRI: April 10, 13, and 14, 2022. (*See, e.g.*, Tr. 485, 683-84, 693, 697.)

[7] *See* 20 C.F.R. §§ 404.1567, 416.967 (setting forth "physical exertion requirements of work in the national economy").

every ten to fifteen minutes with access to a stool or chair and with standing and walking being no more than four hours of the workday. (Tr. 21.) She stated that she made her RFC determination after considering the "medical opinion(s) and prior administrative medical finding(s)," as well as David M.'s symptoms to the extent that they could "reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 21.)

The ALJ determined that David M. had past relevant work as a gas station attendant and a composite job as a head cashier and stocker, ranging from light to medium work. (Tr. 27.) She found that this work was substantial gainful activity and David M. had performed it for long enough to achieve average performance and had done so within the relevant period. (*Id.*) Given his impairments, the ALJ concluded that David M. could not actually or generally perform past relevant work. (*Id.*)

Considering David M.'s age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that David M. could perform, such as clerical checker, office helper, and information clerk. (Tr. 27-28.) Therefore, he was not disabled. (Tr. 28.)

After the Appeals Council denied David M.'s request for review (Tr. 1-7), he filed this action seeking review of the Commissioner's final decision. (ECF 1.)

## II.    LEGAL STANDARDS[8]

The limited question before the Court is not whether David M. was disabled. Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that he was *not* disabled and whether the Commissioner, through the ALJ, correctly applied the relevant law. 42 U.S.C. § 405(g). Working through ALJs, the Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner determines whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment[9]; (3) has impairment(s) that meet or medically equal a listed impairment; (4) has the capacity to do past relevant work, considering their RFC; and (5) is able to do any other work, considering their RFC, age, education, and work experience. *Id.* §§ 404.1520(a), 416.920(a).

The burden of proof is on a Social Security claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010); *see also Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("[D]uring steps two through four of the inquiry, the claimant

---

[8] The respective regulations governing claims for Disability Insurance Benefits, which can be found at 20 C.F.R. Part 404, and claims for Supplemental Security Income, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

[9] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

*always* bears the burden . . . by a preponderance of the evidence . . . .") (emphasis added). At step five, "the burden of production shifts to the Commissioner, who must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with their medical impairments, age, education, past work experience, and RFC." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (citation modified).

Courts review the Commissioner's factual findings to see if "substantial evidence" from the existing administrative record exists to support them.[10] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g) (stating that factual findings supported by substantial evidence "shall be conclusive"). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation modified). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

"The ALJ—not treating or examining physicians or State agency consultants— must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Where substantial evidence supports the ALJ's

---

[10] Any legal issues the ALJ decides are subject to "plenary review." *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

findings of fact, they bind the Court, even if it "would have decided the factual inquiry differently." *Fargnoli*, 247 F.3d at 38. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009)); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion"). The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Fargnoli*, 247 F.3d at 42 (noting that an ALJ need not reference every relevant piece of evidence).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). David M. bears the burden to explain how any "error to which he points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

## III.   DISCUSSION

David M. asserts that substantial evidence does not support the ALJ's determination that he could perform light work with limitations. (*See* ECF 9 at ECF p. 6, 12-13.) He faults the ALJ for discrediting his subjective complaints, arguing that these symptoms are consistent with the medical evidence and could support a claim for

benefits even if not fully corroborated. (*Id.* at ECF p. 4, 9 (citing Tr. 42, 50, 292)). The Commissioner responds that the ALJ "fully accounted" for David M.'s physical impairments and included only "credibly established limitations" in his RFC. (*See* ECF 12 at 4-12.) The Commissioner maintains that substantial evidence supports the ALJ's finding that David M. was not disabled notwithstanding his impairments and limitations. (*See id.* at 12-14.) Considering the parties' respective arguments and upon review of the record, substantial evidence supports the ALJ's RFC determination and conclusion that David M. was not disabled within the meaning of the Social Security Act. Therefore, remand is not required.

### A.    The ALJ Properly Considered David M.'s Subjective Complaints.

David M. contends that the ALJ erred by not finding that he was disabled based on his subjective complaints. He points to his testimony that he has five to six "really bad days" per month where he is "on the floor" and "can't get out of bed" "[f]or the most part." (ECF 9 at ECF p. 9; Tr. 50.) Relatedly, he contends that the ALJ discredited his "severe pain" by "mischaracterizing" it as "often" around a five or six out of ten. (*Id.* at 7-8 (citing Tr. 300, 312, 435-36, 534, 545, 548-49, 595, 600, 650, 711-17, 719).) Because substantial evidence supports the ALJ's decision to discredit David M.'s subjective complaints and she included all credibly established limitations in his RFC, there is no need for remand on these bases. *See Zirnsak*, 777 F.3d at 614.

A claimant's allegation of pain or other symptoms by itself is not enough to establish an impairment or disability.  20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, an ALJ may discount a claimant's subjective statements when they are unsupported by the

10

evidence. *See id.* §§ 404.1529(c)(4), 416.929(c)(4) ("Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms . . . *can reasonably be accepted as consistent* with the objective medical evidence and other evidence.") (emphasis added); *see also Chandler*, 667 F.3d at 363 ("Although any statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them.") (citation modified). "[W]here a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount [the] claimant's pain without contrary medical evidence." *Dougherty v. Astrue*, 381 F. App'x 154, 155 (3d Cir. 2010) (quoting *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). Where an alleged limitation is "supported by the medical evidence but opposed by other record evidence," the ALJ may still choose to discredit it. *Zirnsak*, 777 F.3d at 615 (citation modified). Additionally, when an ALJ hears a claimant's testimony, as here, the Court must give deference to the ALJ's credibility determinations. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

Applying these principles, substantial evidence supports the ALJ's finding that David M.'s "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.) The only evidence supporting David M.'s claim that he was bedridden multiple times a month is the April 7, 2023 disability report that his representative prepared. In it, he alleged that he started being "unable to move" in December 2022. (Tr. 256.) Dr. Monfared's February 2023 report belies this claim. While

David M. reported his pain as a seven out of ten during his examination, Dr. Monfared noted that he appeared "to be in no acute distress" and needed no help changing his clothes, getting on or off the exam table, or rising from a chair. (Tr. 511-12.) January to April 2023 treatment records also contradict David M.'s assertion because they do not document that he had debilitating pain or an inability to move.[11] (*See* Tr. 532-34, 539-41, 552.)

Rather, substantial evidence supports the ALJ's determination that David M.'s pain was "*often*" around a five to six out of ten and not disabling. (Tr. 25 (emphasis added).) Treatment records and imaging showed multilevel degenerative changes in David M.'s spine, including lower lumbar spondylosis with disc bulging and herniation and worsening of foraminal narrowing at L5-S1 over time.[12] (*See* Tr. 355, 486-87, 698-700.) He underwent surgery in 2022 and a nerve ablation in 2021 to treat these conditions, neither of which improved the foraminal narrowing. (*See* Tr. 425-26, 462, 700.) Nevertheless, by 2023 David M. was receiving only conservative treatment like physical

---

[11] The ALJ asked the VE whether a hypothetical individual arriving late to, leaving early from, or missing work four times a month would be able to work. (Tr. 62.) The VE responded that such restrictions would eliminate all work in the national economy. (*Id.*) Because the ALJ ultimately found that David M. was not disabled and did not include tardiness or absenteeism as limitations in his RFC, it follows that she discredited his testimony about being bedridden. (*See* Tr. 20-21, 28.)

[12] Because the ALJ explicitly considered the February 2021 and January 2023 MRIs and found that David M. had degenerative disc disease and resulting limitations, there is no merit to David M.'s claims that she "minimized the[ MRIs'] significance" and "fail[ed] to discuss their functional implications." (ECF 9 at ECF p. 8.)

therapy, injections, and oral pain/neuropathic medications. (Tr. 533-35, 552.) Clinicians reported his prognosis as "good" (Tr. 541) or "fair." (Tr. 514.)

David M.'s own reports of his pain's severity support the ALJ's conclusion.  In the seventeen months following his November 2020 injury, he reported improvement in his pain to about a five out of ten following treatment. (*See* Tr. 681 (establishing date of injury), 651 (March 29, 2021), 650 (April 15, 2021), 599-600 (April 8, 2022).) His pain worsened to a seven or eight out of ten in spring and summer 2022. (*See* Tr. 595 (April 13, 2022), 585 (June 15, 2022).) Following his August 2022 surgery, it improved to roughly a five or six out of ten. (*See* Tr. 420-21 (September 6, 2022), 561-62 (October 25, 2022).) It worsened to about a seven out of ten in the first quarter of 2023. (Tr. 511 (February 11, 2023), 534 (March 27, 2023).) However, by the time of his August 2023 hearing, David M. testified that he was not "currently taking any medication" for his back despite his surgeons encouraging him to schedule an appointment with his primary care physician for further treatment.[13] (*See* Tr. 47-48.) *See Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245-46 (3d Cir. 2020) (finding that a "claimant's decision to cease taking pain medication" was evidence that her pain "was not disabling or severe" (citation modified)); *see also Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 119 (3d Cir. 1995) (noting that "a patient's failure consistently to use prescribed pain medication may undermine the patient's claims of debilitating pain" absent legitimate reasons not to do so). The

---

[13] David M. contends that the ALJ found that he *never* took medication. (*See* ECF 9 at ECF p. 8.) But the ALJ only found that he "*currently* takes no medications," which was his testimony at the August 2023 hearing. (*See* Tr. 25, 47-48) (emphasis added).

medical evidence, David M.'s reported pain, and his cessation of medication are substantial evidence—evidence that a reasonable mind might accept as adequate—supporting the ALJ's decision to discredit David M.'s complaints about the severity of his pain.

David M. also contends that the ALJ failed to consider his testimony about his need to alternate positions every ten to fifteen minutes, difficulty walking for more than ten to fifteen minutes, and "inability to sit or stand for prolonged periods" without serious pain. (ECF 9 at ECF p. 9.) However, notwithstanding David M.'s inconsistent testimony about these limitations,[14] the ALJ incorporated them into his RFC. (*See* Tr. 21 ("David M. needs to alternate positions every ten to fifteen minutes, with standing and walking in total being not more than four hours of the shift and with him able to alter his

---

[14] The ALJ's decision recounted David M.'s claimed functional limitations, which varied over time. (*See* Tr. 21-22.) In July 2022, David M. stated that he had to move or adjust every thirty to forty minutes to stop severe pain. (Tr. 222.) By August 2023, he testified that he could tolerate standing and sitting for roughly twenty and thirty minutes, respectively, before needing to switch to the other posture. (Tr. 43.) He also testified that he had to shift his sitting position every ten to fifteen minutes. (*Id.*)

In July 2022 though, he reported that he independently shopped for groceries weekly for twenty to thirty minutes at a time. (Tr. 225.) He stated in October 2022 that he had been trying to walk more and spent time doing house chores, walking while running errands, and caring for his pet kitten. (*See* Tr. 414.) He later alleged that from December 2022 to April 2023 he was "unable to move," "extremely unbalanced," and could not walk or sit for more than a few minutes "without being in unbearable pain." (Tr. 256.) However, David M. made no similar reports to medical providers during this period. (*See, e.g.*, Tr. 511-12, 533-34.) By August 2023, he testified that he could walk up to a mile at a time yet not stand long enough to grocery shop or cook a meal. (Tr. 43, 45-46.) These inconsistencies bear on his credibility, and the ALJ was entitled to consider them. *See Burns*, 312 F.3d at 129-30.

posture with a stool or chair." (citation modified)). Accordingly, this argument lacks merit.

For these reasons, David M. has not met his burden to show that the Court should remand based on the ALJ's finding that his complaints about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record. *See Chandler*, 667 F.3d at 363; *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal." (quoting *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002))). Substantial evidence supports the ALJ's credibility determination, and this argument does not require remand.

### B.    Substantial Evidence Supports the Finding that David M. Could Perform Light Work.

David M. argues that the ALJ erred in finding that he could perform light work because the limitations included in his RFC "significantly deviate from the standard definition of light work." (ECF 9 at ECF p. 11-12).) He contends that the ALJ erred in concluding that he could work as a clerical checker, office helper, or information clerk because (1) these jobs are classified as light work and (2) the Occupational Information Network ("O*NET") shows that the jobs are inconsistent with his RFC. (*See id.*) David M. also asserts that the ALJ improperly relied upon the VE's "knowledge and experience" to account for David M.'s sit-stand limitation, a limitation which the Dictionary of Occupational Titles ("DOT") does not address. (*Id.* at ECF p. 12 (citing Tr. 63).) The Commissioner responds that the ALJ was "entitled to rely on the VE's testimony as

substantial evidence to support the step five finding." (ECF 12 at 13 (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)).) The Commissioner contends that the VE considered the sit-stand option—which limits David M. to standing for no more than four hours a day—and properly reduced the number of available jobs as a result. (*Id.* (citing Tr. 61, 63).) As a review of the record shows that substantial evidence supports the ALJ's RFC determination and finding that David M. could perform other jobs existing in significant numbers in the national economy, there is no basis for remand.

Under the governing regulations, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Jobs in this category require (1) "a good deal of walking or standing," or (2) "pushing and pulling of arm or leg controls" if they involve "sitting most of the time." *Id.* §§ 404.1567(b), 416.967(b). Under the Social Security Administration's Program Operations Manual System ("POMS"), light work "usually requires walking or standing for approximately six hours of the day and occasional, rather than frequent stooping." POMS § DI 25001.001 (citation modified). In contrast, the regulations define sedentary work as "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* §§ 404.1567(a), 416.967(a). While sedentary jobs primarily involve sitting, "walking and standing are required occasionally." *Id.* §§ 404.1567(a), 416.967(a). Under the POMS guidelines, "sedentary work generally involves periods of standing or walking totaling no more than two hours and sitting totaling six hours of an eight-hour workday." POMS § DI 25001.001 (citation modified).

Upon determining a claimant's RFC at step four and concluding that they cannot perform past relevant work, an ALJ must determine whether they can successfully transition to other work considering their RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. *See* 20 CFR §§ 404.1569, 404.1569a, 416.969, 416.969a; *id.* Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all the exertional demands at a given exertional level, the Medical-Vocational Guidelines direct a conclusion of either "disabled" or "not disabled." *See* SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983).[15] When a claimant's RFC falls between two exertional levels, agency policy provides guidance. *See id.* If the claimant's RFC "falls between two rules which direct the same conclusion," the ALJ should adopt that conclusion. *Id.* at *2. When the rules direct opposite conclusions, the ALJ must consider whether the claimant is slightly or significantly reduced in their ability to perform the higher exertional level according to the regulatory criteria. *See id.* If the claimant's RFC is slightly reduced, a finding of "not disabled" is likely appropriate. *See id.* On the other hand, if the RFC is "significantly reduced," a finding of "disabled" is indicated instead. *See id.* Where the claimant's limitations are "in the middle" of the regulatory criteria for each level, agency policy recommends consulting a VE. *See id.* at *3.

---

[15] "Although Social Security Rulings do not have the force and effect of the law or regulations, they are published under the Commissioner's authority and are *binding* on the Social Security Administration." *Moldavsky v. Kijakazi*, No. 22-1447, 2023 WL 3570927, at *8 n.23 (E.D. Pa. May 19, 2023) (emphasis added) (citation modified) (quoting *Allen v. Barnhart*, 417 F.3d 396, 402 n.3 (3d Cir. 2005)).

Here, David M.'s RFC places him between the sedentary and light exertional levels because his limitation of standing/walking for four hours or less each workday generally falls below the standing/walking requirement for light work. (Tr. 20.) *See* 20 CFR §§ 404.1567(b), 416.967(b); *see also* POMS § DI 25025.015 (instructing ALJs to "[a]ssume that an RFC for standing/walking/sitting less than the top level of standing/walking/sitting requirements represents an RFC falling between exertional levels of work"). The ALJ found that David M. could only stand or walk for four hours out of an eight-hour workday because of his sit-stand limitation. (Tr. 20-21.) However, under the POMS guidelines, light work usually requires the ability to walk or stand for *six* hours each day.[16] But, as the ALJ found that David M. could occasionally stoop and frequently lift or carry up to ten pounds, his RFC determination otherwise harmonizes with the criteria for light work, under both the governing regulations and agency policy. (*See* Tr. 20-21.) *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); POMS § DI 25001.001.

Applying the ALJ's findings of fact to the Medical-Vocational Guidelines, David M. falls between rules 201.28 and 202.21. Given that both rules recommend a finding of "not disabled," agency policy suggests that the ALJ should have found David M. "not disabled" under the sedentary exertional level. *See* SSR 83-12, 1983 WL 31253, at *2; DI § 25025.015(B) ("If the claimant's exertional capacity falls between two

---

[16] "[W]hile POMS guidelines warrant respect, the Third Circuit has made clear that they do not have the force of law." *Taylor G. v. Comm'r of Soc. Sec.*, No. 23-1029, 2024 WL 1327943, at *9 (D.N.J. Mar. 28, 2024) (citation modified) (quoting *Edelman v. Comm'r Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996)). David M. is therefore "not required to have the RFC to stand for six hours a day to be considered capable of . . . modified light work." *See id.*

rules that both result in a determination of not disabled, use the rule from the lower numbered table as a framework for a determination."). However, the ALJ followed the procedure for when an exertional level falls between two rules directing opposite conclusions, finding that David M.'s "ability to perform all or substantially all the requirements of th[e light work level] has been impeded by additional limitations." (Tr. 28.) *See* SSR 83-12, 1983 WL 31253, at *2-3.

So, "[t]o determine the extent to which these limitations erode the unskilled light occupational base," the ALJ questioned the VE about whether David M. could work at jobs existing in significant numbers in the national economy. (Tr. 28.) When asked about David M.'s sit-stand limitation, the VE replied that there were jobs at the light work exertional level that could accommodate David M.'s need to sit for half of the day, albeit at "reduced numbers." (*See* Tr. 60-62.) Specifically, the VE testified that the national numbers for clerical checker, office helper, and information clerk would be 34,000, 45,000, and 35,000, respectively. (Tr. 61.) The VE also testified that the DOT and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")[17] were consistent with his testimony even though neither address a sit-stand

_____

[17] In 2023, when the ALJ's decision issued, the Commissioner primarily relied upon the DOT, along with its companion publication the SCO, as the source of job requirements when making disability determinations. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *see also* SSR 24-3p, 2024 WL 5256890, at *2 n.1 (Dec. 6, 2024) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *id.* at *2 ("We continue to recognize the DOT as a valid and reliable source of occupational information, and we will continue to use it in adjudication."). The Social Security Administration rescinded SSR 00-4p on January 6, 2025.

option. (Tr. 63.) The VE explained that his testimony about the sit-stand option was "based on [his] knowledge and experience as a vocational rehabilitation counselor." (*Id.*) The ALJ concluded that the VE's testimony was "consistent with the information contained in the [DOT]" except for the sit-stand option and accepted the VE's explanation of the source of his knowledge.  (*See* Tr. 28.)

David M. now takes issue with the ALJ's reliance on the VE's experience, but it is well-settled that ALJs have the latitude to rely upon VE testimony in performing the step-five analysis.  *See Zirnsak*, 777 F.3d at 616.  Moreover, the ALJ appropriately responded to the VE's testimony about the sit-stand option.  *See* SSR 00-4p, 2000 WL 1898704, at *2-3 (setting the standards for resolving conflicts between a VE's testimony and the DOT). Generally, a VE's occupational testimony should be consistent with evidence supplied by the DOT.  *Zirnsak*, 777 F.3d at 617.  An ALJ should "(1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in their decision how the conflict was resolved."  *Id.* (citation modified).  However, failure to do so does not "mandate remand" if "substantial evidence exists elsewhere in the record that can form an appropriate basis to support the result."  *Id.* (citation modified).

Here, there was no inconsistency. The DOT listings for the three occupations the VE identified are silent as to a sit-stand option. *See* DICOT 237.367-022 (237.367-022 Information Clerk), 1991 WL 672188 (4th ed. 1991); DICOT 239.567-010 (239.567-010 Office Helper), 1991 WL 672232 (4th ed. 1991); DICOT 222.687-010 (222.687-010 Checker I), 1991 WL 672130 (4th ed. 1991); *see also* DICOT Glossary, 1991 WL 688699 (4th ed. 1991)

(defining terms used in the DOT). Absent any conflict, the ALJ had no duty to further query the VE.  *See Leech v. Barnhart*, 177 F. App'x 225, 228 (3d Cir. 2006) (finding a VE's "unqualified, uncontradicted" testimony about a sit-stand option provided substantial evidence for the ALJ's holding); *see also, e.g.*, *Miller v. Colvin*, No. 14-1301, 2015 WL 999171, at *11 (M.D. Pa. Mar. 6, 2015) ("[T]he VE's testimony with respect to the sit/stand option did not conflict with the DOT, . . . [it] supplemented the DOT."); *Duncan v. Comm'r of Soc. Sec.*, No 19-6304, 2020 WL 3425303, at *3 (D.N.J. June 23, 2020) ("The VE used his experience to . . . supplement[] the information in the DOT. Plaintiff has failed to point to anything the VE said that contradicted the information in the relevant DOT listings.").

Even presuming that that VE's testimony conflicted with the DOT, there would be no cause for remand.  The ALJ asked the VE if his testimony was consistent with the DOT, and the VE explained how he obtained his knowledge of the sit-stand option.  (Tr. 63.) The ALJ also afforded David M.'s counsel an opportunity to question the VE, but she declined. (*See* Tr. 63-64.) The ALJ then cited the VE's reasonable explanation in her decision.  (*See* Tr. 28.)  The ALJ complied with her duty to resolve inconsistencies between the VE's testimony and the DOT as a result. *See Zirnsak*, 777 F.3d at 617; *Duncan*, 2020 WL 3425303, at *3.[18]

---

[18] David M. cites two unpublished decisions to support his argument that the ALJ erred in relying on the VE's experience, but they are distinguishable. (*See* ECF 9 at ECF p. 12.) In the first, the court found that the ALJ erred in concluding that there was no conflict where the claimant was functionally illiterate in English and the DOT entries for the VE-identified jobs required English proficiency. *Rivera-Negron v. Astrue*, No. 12-3837, 2013 WL 5823713, at *5 (E.D. Pa. Oct. 30, 2013). In the second, an out-of-circuit decision, the court ruled that the ALJ erred in finding that there was no conflict where the claimant could never reach overhead and the DOT entries for the VE-identified jobs required

David M.'s O*NET argument is also unpersuasive. While courts "have recently expressed concern over the relevancy" of the "aging DOT," courts within the Third Circuit have been "hesitant" to reject VE's testimony "relying upon the DOT in favor of the descriptions on O*NET." *See Pollock v. O'Malley*, No. 22-1856, 2024 WL 4803530, at *19 (M.D. Pa. Nov. 15, 2024) (citation modified). This is because SSR 00-4p directs that the relevant inquiry is whether a VE's testimony is consistent with the DOT. *See Zirnsak*, 777 F.3d at 617; *see also Smith v. Comm'r of Soc. Sec.*, No. 19-20682, 2020 WL 7396355, at *7 (D.N.J. Dec. 17, 2020) ("The ALJ fulfilled her obligation by inquiring whether there was any conflict between the VE's testimony and the DOT. The VE is allowed to rely on the DOT even if it is inconsistent with its more modern counterpart O*NET." (citation modified)); *Junod v. Berryhill*, No. 17-1498, 2018 WL 5792214, at *4 (W.D. Pa. Nov. 5, 2018) (collecting cases). For claims decided under SSR 00-4p there was a "lack of clarity as to whether the Commissioner even considered O*NET a reliable resource." *Whitmire v. Comm'r of Soc. Sec.*, No. 13-1380, 2014 WL 582781, at *10 (M.D. Pa. Feb. 14, 2014) (citation modified); *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317 (6th Cir. 2020) (noting that the Commissioner determined in 2010 that "O*NET in its current form was

---

frequent reaching. *Lance Paul E. v. O'Malley*, No. 23-217, 2024 WL 1885821, at *5 (D. Idaho Apr. 30, 2024). The court also determined that the ALJ failed to obtain a reasonable explanation for the inconsistency, such as the VE stating that he acquired the information from his experience in job placement or career counseling. *Id.* at *6. Here, there is (1) no conflict between the DOT and the VE's testimony about a sit-stand option and, regardless, (2) the VE provided a reasonable explanation. (Tr. 63.) *See Zirnsak*, 777 F.3d at 617.

not suitable for disability claims adjudication").[19] Here, as SSR 00-4p was the controlling agency policy at the time of the August 2023 hearing, the VE used the DOT classifications to determine if David M. could work as a clerical checker, office helper, or information clerk.[20] She did not err in relying on the VE's testimony.  (*See* Tr. 28.)

There is also no "inherent contradiction" between David M.'s limitations and light work.  *See Fleming v. Kijakazi*, No. 20-234, 2023 WL 7222034, at *7 (W.D. Pa. Nov. 2, 2023). Courts in this Circuit have repeatedly held that claimants can perform light work where they can stand/walk and carry/lift up to ten pounds for at least one-third of the workday. *Contrast Anderson v. Astrue*, 825 F. Supp. 2d 487, 497 (D. Del. 2011) (holding that the claimant's ability to stand between one-third and one-half of the workday was compatible with light work), *and Fleming*, 2023 WL 7222034, at *7 (holding the same where the claimant could stand four hours per workday), *with Ford v. Colvin*, No. 14-1046, 2015 WL 4608136, at *8 (D. Del. July 31, 2015) (holding that a claimant's ability to stand two hours each workday was incompatible with light work), *and Campbell v. Astrue*, No. 09-5356, 2010 WL 4689521, at *5 (E.D. Pa. Nov. 2, 2010) (holding the same where the claimant could stand one to two hours per workday). These decisions comport with light work's

---

[19] Other circuits have continued to affirm the DOT as the gold standard under SSR 00-4p despite available updated resources.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012); *O'Neal*, 799 F. App'x at 317-18 (citing *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) ("The DOT is the best source for how a job is generally performed." (citation modified)).

[20] The DOT classifies information clerk as a sedentary position, not light work. DICOT 237.367-022, 1991 WL 672188.  (*See* ECF 9 at ECF p. 11.)

regulatory definition, which requires "frequent" lifting or carrying of up to ten pounds and usually involves "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 404.1567(b)). Because the ALJ determined that David M. could do these activities for up to four hours each workday, his RFC does not conflict with the light work jobs of office helper or clerical checker. (*See* Tr. 20-21.)

Finally, David M. asserts that the ALJ's hypotheticals to the VE failed to address how his frequent absences from work and his symptoms' persistence would limit his productivity and ability to sustain competitive employment. (*See* ECF 9 at ECF p. 11-12.) He points to treatment records documenting "significant post-treatment fatigue," "limited endurance," and "frequent flare-ups" of symptoms. (*Id.* at ECF p. 12 (citing Tr. 410-17, 548).)

The ALJ did not need to address these limitations in hypotheticals because they are not part of David M.'s RFC. As discussed, substantial evidence supported the ALJ's decision not to credit David M.'s claims of regularly being bedridden. (*See* Tr. 20-21, 28.) Regarding David M.'s productivity, his testimony solely concerned his physical limitations and pain. (*See* Tr. 41-53.) He did not allege issues with concentration, persistence, pace, or productivity, which the ALJ could have incorporated into his RFC if substantiated. *See, e.g.*, *Bacon v. Colvin*, No. 12-1477, 2016 WL 556727, at \*10 (D. Del. Feb. 12, 2016) (concluding that a claimant's "non-production pace" RFC limitation sufficiently captured her moderate difficulties in concentration, persistence, and pace). Given David M.'s failure to credibly establish these limitations, there was no need for the ALJ to ask the VE hypotheticals about them. *See Zirnsak*, 777 F.3d at 614.

Substantial evidence supports both the ALJ's RFC determination and her finding that David M. could perform modified light work, so remand is not required as to these conclusions.

### C.     Substantial Evidence Supports the ALJ's Evaluation of Dr. Monfared's Opinion.

David M. argues that the ALJ erred in evaluating Dr. Monfared's opinion. He complains that her report "noted few abnormalities" and argues that her opinion "lacked rationale or basis in [his] extensive medical records." (ECF 9 at ECF p. 7.) He contends that the ALJ should have afforded more weight to his treating neurosurgeon Dr. O'Rourke's findings than to those of Dr. Monfared, an internal medicine specialist who only examined him once. (*Id.*) The Commissioner replies that the ALJ properly considered both doctors' findings while determining David M.'s RFC.  (*See* ECF 12 at 5-6, 10.) Upon review of the record, the ALJ appropriately evaluated Dr. Monfared's opinion and substantial evidence supports her decision.

An ALJ is "not bound to accept physicians' conclusions," and the final determination of a plaintiff's eligibility for benefits always resides with the ALJ.  *See I.P. v. Comm'r, Soc. Sec. Admin.* No. 20-4958, 2021 WL 4099730, at *3 (D.N.J. Sept. 9, 2021) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)). Under the applicable regulations for claims filed after March 27, 2017 — like David M.'s — an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). ALJs must "articulate how [they] considered the medical

opinions" and "how persuasive" the opinions are. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

Supportability and consistency are the "most important" persuasiveness factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 n.1 (W.D. Pa. Dec. 4, 2023); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). An ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion considered in reaching a determination. *Zaborowski*, 115 F.4th at 639. To decide whether the ALJ sufficiently developed the record, the Court reads their decision "as a whole." *Jones*, 364 F.3d at 505. ALJs need "to explain only the dispositive reasons for their decisions, not everything else that they considered." *Zaborowski*, 115 F.4th at 639. Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.*

Here, the ALJ properly considered the supportability and consistency factors when evaluating Dr. Monfared's opinion. As the ALJ explained, Dr. Monfared found that David M could frequently lift up to twenty pounds and occasionally lift twenty-one to fifty pounds or carry up to twenty pounds. (Tr. 26 (citing Tr. 515).) Dr. Monfared opined that David M. "could sit eight hours, stand one hour, and walk one hour at one time

without interruption," and "sit eight hours, stand four hours, and walk four hours total in an eight-hour workday." (*Id.* (citing Tr. 516).) She also found that he "did not require the use of a cane to ambulate" but "could not walk a block at a reasonable pace on rough or uneven surfaces." (*Id.* (citing Tr. 516, 520).) According to Dr. Monfared, David M. "could use his hands frequently" and occasionally use "his feet to operate foot controls" or "climb stairs and ramps, stoop, kneel, and crawl," but "could never climb ladders or scaffolds, balance, or crouch." (*Id.* (citing Tr. 517-18).) She also found that he "could tolerate occasional exposure to unprotected heights, extreme cold, and vibrations and frequent exposure to moving mechanical parts." (*Id.* (citing Tr. 519).)

Dr. Monfared's assessment of David M.'s ability to do work-related activities only partially persuaded the ALJ. (*Id.*) The ALJ found Dr. Monfared's opinion was "generally well supported" by her examination, which documented David M.'s obesity and "a blood pressure of 142/92." (*Id.* (citing Tr. 512).) Dr. Monfared logged his reports of bilateral calf pain and back pain. (Tr. 25-26 (citing Tr. 511).) She also described his squat range of motion as less than 50% due to his back pain and found that he "had decreased lumbar range of motion." (Tr. 26 (citing Tr. 512, 523).) The ALJ noted that Dr. Monfared's physical examination of David M. was otherwise "generally within normal limits." (*See* Tr. 26, 511-13, 522-25.)

The ALJ found Dr. Monfared's opinion was only partially consistent with the record. (Tr. 26.) Instead of the "sharp, 7/10" back pain that Dr. Monfared reported, the ALJ noted that David M's reports of pain were generally around a five to six out of ten and that he took no medications by the August 2023 hearing. (Tr. 26, 511.) The ALJ also

explained that David M.'s "left lower extremity [was] particularly affected with peripheral neuropathy." (Tr. 26) In contrast, Dr. Monfared had not diagnosed David M. with peripheral neuropathy or radiculopathy, likely in response to him "report[ing] no radiation of pain" to her. (*See* Tr. 511-14.) The ALJ's decision demonstrates that she sufficiently analyzed the supportability and consistency factors by considering Dr. Monfared's report and the overall record. (*See* Tr. 26.) "There was no need to say more than that." *See Zaborowski*, 115 F.4th at 639-40.[21]

David M. complains that the ALJ "relied heavily" on Dr. Monfared's opinion despite her "limited" expertise. (ECF 9 at ECF p. 7.) Ultimately, they came to different conclusions. For example, while Dr. Monfared opined that David M. could sit and stand for an hour at a time, the ALJ found that he needed to be able to shift between sitting and standing every ten to fifteen minutes.  (*See* Tr. 21, 516.)  Also, while Dr. Monfared did not diagnose David M. with peripheral neuropathy or myofascial pain syndrome, the ALJ found that he had these severe impairments. (*See* Tr. 18, 511-14.) In view of the entire record, David M. has not shown that the ALJ inappropriately weighed Dr. Monfared's opinion, and her consideration of it was not an error that requires remand.

---

[21] David M. contends that the ALJ erred in crediting Dr. Monfared's opinion because it failed to list his impairments "beyond a cursory diagnosis of 'chronic back pain' and 'history of herniated disc, status post microdiscectomy.'" (ECF 9 at ECF p. 7 (quoting Tr. 514).) This mischaracterizes her report. Dr. Monfared also diagnosed him with lumbar spondylosis, IT band syndrome, "some balance difficulties," and "[l]eft hip pain with associated trochanteric bursitis." (Tr. 514.)  Further, she documented his obesity and her recommendation that he go to the emergency room because of his high blood pressure. (Tr. 512, 514.) These findings largely track the medical record and the ALJ's determination of David M.'s impairments.  (*See* Tr. 18-20.)

Turning to David M.'s arguments about Dr. O'Rourke, it was within the ALJ's discretion whether to articulate consideration of factors such as specialization and length and type of relationship. *See* 20 C.F.R. §§ 404.1520c(b)-(c), 416.920c(b)-(c). The regulations do not require an ALJ to discuss these factors for each medical provider. In fact, they recognize that "many claims have voluminous case records containing many types of evidence from different sources" and "it is not administratively feasible" for an ALJ "to articulate in each determination or decision how [they] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). So, the ALJ's failure here to explicitly discuss the implications of Dr. Monfared's and Dr. O'Rourke's specializations or relationships with David M. does not, without more, mean that her decision lacked substantial evidence.

On review, the ALJ's assessment of Dr. Monfared's opinion was consistent with the regulations and substantial evidence supports it. *See Zaborowski*, 115 F. 4th at 640. Remand is not required based on this argument.

### D.    The ALJ Adequately Considered David M.'s Obesity.

David M. argues that the ALJ's opinion erroneously discounted his obesity, which worsens "his musculoskeletal and neurological conditions by affecting his gait, "increasing pain, reducing mobility, and contributing to fatigue." (ECF 9 at ECF p. 12-13.) He maintains that the ALJ's mention of his lack of respiratory or cardiovascular issues was insufficient to comply with the regulations. (*Id.* at ECF p. 12-13; ECF 13 at ECF p. 3-4). The Commissioner responds that because the ALJ mentioned David M.'s obesity

when discussing his RFC discussion and stated that she had taken it into account in steps two through five of the sequential disability analysis, the Court should "take her at her word." (ECF 9 at ECF p. 12 (citation modified).) The Commissioner also contends that the ALJ considered David M.'s report of walking, doing errands, and caring for his pet without issue when considering whether his obesity had limiting effects on his physical abilities. (*Id.* at ECF p. 12 (citing Tr. 414).) Considering the parties' respective arguments and on review of the record, because the ALJ explicitly considered David M.'s obesity when determining his RFC and because David M. fails to show that any error was harmful, remand is not warranted based on this argument. *Rutherford*, 399 F.3d at 553.

The Commissioner removed obesity as a listed impairment in 2000, but "this did not eliminate obesity as a cause of disability." *Diaz*, 577 F.3d at 503; *see* 20 C.F.R., Part 404, Subpart P, Appendix 1. "Rather, the Commissioner has since promulgated a series of SSRs, which indicate how obesity is to be considered under the listings." *Rose O. v. O'Malley*, No. 22-4728, 2024 WL 4163995, at *5 (D.N.J. Sept. 12, 2024). SSR 00-3p required ALJs to conduct "an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant." *Diaz*, 577 F.3d at 503. Although SSR 02–1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), then superseded SSR 00–3p, it "did not materially amend SSR 00–3p." *Id.* SSR 19-2p has since rescinded and replaced SSR 02-1p. SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019). Multiple courts have noted that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how obesity should be analyzed." *Rose O.*, 2024 WL 4163995 at *5; *see also Heck v. Comm'r of Soc. Sec. Admin.*, No. 20-2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021) (collecting cases), *report*

30

*and recommendation adopted sub nom.*, *Heck v. Comm'r of Soc. Sec.*, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022). SSR 02-1p notes that the "combined effects of obesity with other impairments may be greater than might be expected without obesity" and requiring ALJs to "explain how [they] reached [their] conclusions on whether obesity caused any physical or mental limitations." 2002 WL 34686281, at *6-7 (Sept. 12, 2002). SSR 19-2p states that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." 2019 WL 2374244, at *4.

In the Third Circuit, *Diaz* is still "the leading case" addressing whether an ALJ has complied with their duties under the obesity regulations.[22] *See Geiser v. Saul*, No. 19-1935, 2020 WL 3172746, at *7 (M.D. Pa. June 15, 2020). It requires an ALJ to "*meaningfully consider* the effect of a claimant's obesity, individually and in combination with [their] impairments, on [their] workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504 (emphasis added). "[F]airly construed, *Diaz* holds that where an

_____

[22] David M.'s briefs do not cite *Diaz* or any other case interpreting the obesity regulations. (*See* ECF 9 at ECF p. 12-13; ECF 13 at ECF p. 3-4.) The Commissioner similarly fails to cite relevant precedent. (*See* ECF 12 at 12.) The parties are reminded that briefs must contain "legal authority needed to support [their] arguments." *See Standing Procedural Order for Cases Seeking Social Security Review* (E.D. Pa. Dec. 5, 2022), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/stor d_ssreview_12.2022.pdf (last visited Dec. 12, 2025).

While *Diaz* cited the since-rescinded SSR 00-3p, courts in the Third Circuit continue to apply its holding *See Craig S. v. Dudek*, No. 24-6001, 2025 WL 1243059, at *7-8 (E.D. Pa. Apr. 29, 2025) (collecting cases).

ALJ has defined a claimant's obesity as a severe impairment at step two, as here, there is a basic duty of articulation owed to the claimant to explain how that obesity affects the issue of disability." *Geiser v. Saul*, No. 19-1935, 2020 WL 3172746, at *7 (M.D. Pa. June 15, 2020) (citation modified). However, the ALJ did not need to "use magic words" or to "adhere to a particular format in conducting her analysis" to satisfy her burden of articulation. *Diaz*, 577 F.3d at 504 (citation modified). If she met that burden, the substantive standard of review remains highly deferential. *See id.* at 504-06. Additionally, to prevail on his claim of error, David M. must show "how his obesity affects his ability to perform basic work activities," not just state that it *could* impact his ability. *See Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (citation modified) (affirming a benefits denial where the claimant did "not point to any medical evidence that her impairments, determinable or not, limit[ed] her ability to perform work activities").

    Notably, David M. "did not even mention obesity as one of his physical impairments at the administrative hearing." *Martin v. Saul*, No. 16-117, 2019 WL 3714493, at *6 (E.D. Pa. Aug. 7, 2019). (*See* Tr. 20, 41-53). Nonetheless, he now argues that the ALJ failed to sufficiently discuss how it interacted with his physical limitations. (*See* ECF 9 at ECF p. 13.) The ALJ's decision, read as whole, shows sufficient consideration of "[t]he combined effects of [David M.'s] obesity" with his other impairments to support the conclusion that his obesity did not meaningfully exacerbate the individual effects of any of his impairments. *See* SSR 19-2p, 2019 WL 2374244, at *4.

    The ALJ first determined that David M.'s obesity was a severe impairment at step two. (Tr. 18.) At step three, she noted that the medical records "generally reflect body

mass indices (BMI) in the 40s" but determined that there was no "substantial evidence of listing-level restriction on physical functioning." (Tr. 20.) Addressing impairments often associated with obesity,[23] she found no mention in the record of "significant respiratory or cardiovascular issues other than some elevated blood pressure readings." (*Id.*) Turning to the possible effects of David M.'s obesity on his musculoskeletal limitations, the ALJ highlighted P.T. Castagnera's October 25, 2022 treatment note which documented that David M. "spent his time doing house chores, walking while running errands, and caring for his pet kitten." (*Id.* (citing Tr. 414).) The ALJ then cited SSR 19-2p's requirements and stated that she had considered David M.'s obesity in reaching her conclusions at steps two through five of the sequential disability analysis, "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to [his] obesity." (*See id.*)

At step four, the ALJ repeatedly cited David M.'s BMI and explained that she considered his obesity against the "medical evidence of record." (*See* Tr. 20, 23). The evidence demonstrated isolated instances of shortness of breath but no significant respiratory or cardiovascular issues other than high blood pressure. (*See, e.g.*, Tr. 418, 429, 432, 449, 466, 512, 631-32.) The ALJ also found no exacerbation of David M.'s physical limitations from his obesity. She considered Dr. Semonche's August 2021 note which

---

[23] The Social Security Administration's guidance states that obesity "is often associated with "musculoskeletal, respiratory, [and] cardiovascular . . . disorders" and "increases the risk of developing impairments" such as high blood pressure. SSR 19-2p, 2019 WL 2374244, at *3; *see also Diaz*, 577 F.3d at 503-04 (finding the same).

documented David M.'s complaint of back pain but otherwise showed a "generally normal objective examination." (Tr. 23 (citing Tr. 292).) Likewise, P.T. Castagnera's October 2022 note demonstrated David M.'s ability to walk and independently care for himself and his kitten. (Tr. 20 (citing Tr. 414).) The ALJ also highlighted Dr. Monfared's February 2023 report, which documented David's M.'s high blood pressure, BMI of 43, "inability to heel and toe walk," "decreased ability to squat, and decreased lumbar spine range of motion." (Tr. 26 (citing Tr. 512, 523).) Yet, Dr. Monfared also noted that David M. "used no assistive device" to walk and his "gait, station, heart, lungs, . . . bilateral straight leg raise, [and] strength . . . were all within normal limits."[24] (*Id.* (citing Tr. 512-13).)

---

[24] In his Reply, David M. contends that the ALJ erred by assuming his obesity did not cause limitations "simply because the medical records do not explicitly reference them." (ECF 13 at ECF p. 4). He cites two cases in support, but they are distinguishable. *See Mason v. Shalala*, 994 F.2d 1058, 1068 n.15 (3d Cir. 1993) (finding it inappropriate to "construe a physician's silence as to a patient's pain as an affirmative statement that the patient is not in pain"); *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985) (holding that an examining physician's silence as to how a claimant's impairment affected his work ability did not mean that the physician opined that the claimant was not disabled).

The ALJ evaluated the overall record for evidence that David M.'s obesity exacerbated his impairments. (*See* Tr. 20-27.) Her statement that no "examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity" does not align with the evidence she explicitly considered. (Tr. 20.) Clinicians stated more than once that David M.'s obesity likely caused or worsened one of his health conditions. (*See, e.g.*, Tr. 622 (noting that "obesity with loud snoring" may have caused his inflamed uvula), 641 (correlating his obesity with his elevated blood pressure).) Both Drs. Manganiello and Hutz opined that David M.'s "[o]besity contributes to [his] inability to ambulate effectively." (Tr. 72, 79, 85, 93.) Even so, this does not require remand.

The ALJ appropriately weighed the evidence and rejected Dr. Mangianiello's and Dr. Hutz's conclusions about how David M.'s obesity impacted his ability to walk. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). She found their opinions as to his physical limitations

The ALJ's explicit discussion and contemplation of David M.'s obesity while assessing his RFC satisfied her duty of articulation under *Diaz*. *See Hoyman*, 606 F. App'x at 680; *see also Echard v. Saul*, No. 20-1308, 2021 WL 4479711, at *1 n.2 (W.D. Pa. Sept. 30, 2021) (finding that an ALJ satisfied his duty of articulation where he "specifically included consideration of the claimant's categorically obese BMI while combing through the evidence to craft an appropriate RFC" (citation modified)). Although it "would have been helpful had the ALJ more thoroughly explained the combined effects of David M.'s impairments," it was enough for her to provide a brief analysis of the medical evidence as it related to David M.'s obesity and impairments in addition to stating that she "considered any additional and cumulative effects of obesity." *Cooper v. Comm'r of Soc.*

---

only partially persuasive. (*See* Tr. 25-26.) She specifically noted that Dr. Manganiello's explanation only "somewhat supported" his opinion, which was "partially consistent" with the evidence. (Tr. 25.) As for Dr. Hutz, the ALJ determined that his opinion was "generally well supported" by his explanation but only "partially consistent" with the overall record. (Tr. 26.) Relevant to David M.'s physical limitations, the ALJ found that both doctors' conclusions were inconsistent with his failure to require use of an assistive device at Dr. Monfared's consultative examination. (Tr. 25-26.) David M.'s reports of sharp pain and struggle to perform personal care activities were inconsistent with his reports of pain generally being around a five or six out of ten, his discontinuance of medication, and his documented ability to do chores, walk while running errands, and care for his pet. (*See* Tr. 25-26, 71-72, 78-79, 84-85, 92-93.)

Though the doctors found that David M.'s obesity aggravated his difficulties with walking, they still opined that he could perform light work and stand and/or walk with breaks for about six hours per workday. (*See* Tr. 70-72, 77-79, 87-89, 95-97.) The ALJ's RFC determination was more restrictive in comparison, requiring that David M. be allowed to sit every ten to fifteen minutes and not have to stand or walk for more than four hours out of a shift. (Tr. 20-21.) Because he "does not point to any evidence that that his obesity and other impairments together limit his ability to perform work activities" more than what the ALJ accounted for in the RFC determination, he has not shown reversible error. *See Carter*, 805 F. App'x at 143.

*Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014) (citation modified). *Contrast id.* (finding that an ALJ complied with the regulations where he asserted that he considered the claimant's obesity and noted that consultative examiners had found that the claimant had a normal gait and could walk effectively despite his obesity), *with Diaz*, 577 F.3d at 504 (finding that the "ALJ's citation of reports by doctors who were aware of [the claimant's] obesity" did not constitute sufficient implicit consideration where the ALJ failed to provide "*any* discussion of the combined effect of Diaz's impairments"). That the ALJ "did not expressly restate at step four that her determination of David M.'s RFC was based on the combination of his obesity and other impairments does not show that she did not adequately consider his obesity." *See Holloway v. Saul*, No. 19-392, 2019 WL 7293356, at *17 (E.D. Pa. Dec. 30, 2019) (citation modified). Because she provided some discussion of David M.'s obesity in the context of his other impairments and symptoms at step four, she complied with *Diaz*'s dictates. *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016).

Even if the ALJ failed her duty of articulation at step four, David M. has not shown that this error was harmful. *See Shinseki*, 556 U.S. at 413. Substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—supports the ALJ's conclusion that David M. was not disabled. *Pierce*, 487 U.S. at 565. The ALJ's restrictive RFC determination accounted for David M.'s substantiated physical limitations. (Tr. 20-21.) In the end, what matters is "the demonstration of the functional limitations of the disease or impairment rather than the mere diagnosis of the disease or name of the impairment." *Dietrich v. Saul,* 501 F. Supp.

3d 283, 294 (M.D. Pa. 2020) (citation modified). Any "failure to explicitly delineate where obesity may have caused or contributed to specific symptoms and functional limitations does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations." *Id.*

David M. merely speculates how his obesity aggravated his other impairments. (*See* ECF 9 at ECF p. 13 ("For example, [his] gait abnormalities . . . are *likely aggravated* by his obesity." (emphasis added)). He does not "point[] to specific medical evidence in the record to demonstrate that his obesity" aggravated his impairments or caused additional impairments. *See Woodson*, 661 F. App'x at 765; *see also Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (affirming a denial of benefits where the claimant failed to "identify how his obesity would affect the five-step evaluation process beyond a mere generalized response that it would 'obviously negatively impact [his] . . . back pain'"). Because David M. proffers "no suggestion as to what functional limitations should have been included in his RFC to account for his obesity that are not already there," he "offers no more than vague speculation that his weight could have had an impact, the type of claim" the Third Circuit rejected "in *Rutherford*." *Tipton v. Saul*, No. 19-160, 2020 WL 5805257, at *1 n.1 (W.D. Pa. Sept. 29, 2020) (citation modified).[25]  His generalized claims are insufficient to require remand. *Rutherford*, 399 F.3d at 553.

_____

[25] The Third Circuit reasoned in *Diaz* that it was a "matter of common sense" that obesity might exacerbate conditions affecting weight-bearing joints. 577 F.3d at 504 (noting so for knee joint dysfunction). Nonetheless, David M. has pointed to no evidence suggesting an interaction between his obesity and his physical limitations. (*See* ECF 9 at ECF p. 12-13; ECF 13 at ECF p. 3-4.) *See Leonardis v. Comm'r of Soc. Sec.*, No. 18-13098, 2020 WL 6281606 at *3 (D.N.J. Oct. 27, 2020). While the practical considerations in *Diaz* are

The ALJ explicitly considered David M.'s obesity when formulating his RFC and satisfied her duty of articulation under *Diaz*. *See Hoyman*, 606 F. App'x at 680. Because David M. has not shown an absence of substantial evidence to support his RFC determination, remand is not warranted based on his obesity argument. *See Carter*, 805 F. App'x at 143; *Rutherford*, 399 F.3d at 553.

## IV.    CONCLUSION

Upon review of the record, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists to support the ALJ's RFC determination and conclusion that David M. was not disabled. *Biestek*, 587 U.S. at 103. Substantial evidence is a "low threshold." *Zaborowski*, 115 F. 4th at 640. Because David M. has not shown that any of his complaints would have changed the outcome of his case under the governing regulations, remand for further consideration is not required. *Rutherford*, 399 F.3d at 553. His request for reversal or remand is **DENIED**. The Commissioner's final decision is **AFFIRMED**, and this matter is **DISMISSED**.

An appropriate Order follows.

---

well-taken, they cannot shift the burden at step four to the Commissioner to disprove David M.'s disability. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Requiring an ALJ to presume that obesity worsens all musculoskeletal conditions would also contradict agency guidance. *See* SSR 19, 2019 WL 2374244, at *4 ("We will not make *general assumptions* about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record." (emphasis added)).